(38 Misc. Rep. 697.)

PEOPLE ex rel. BURNS v. PARTRIDGE, Commissioner of Police, et al.

(Supreme Court, Special Term, Kings County.   October, 1902.)

1. MUNICIPAL CORPORATIONS—DETECTIVE SERGEANTS—APPOINTMENT—CONSTITUTIONAL LAW.
   Laws 1901, c. 466, amendatory of Laws 1897, c. 378, § 290, changing the term of office of detective sergeants of the New York City police, and making the positions of those who were in office on April 1, 1901, permanent, is unconstitutional, as in violation of Const. 1894, art. 10, § 2, providing that all city officers whose election or appointment is provided for by the constitution shall be elected by the electors of such city, or some division thereof, or appointed by the authorities thereof, in that the legislature, not being a local authority, appoints, in effect, to a civil office.

2. SAME—CITY OFFICERS.
   A detective sergeant is a city officer within Const. 1894, art. 10, § 2, providing that electors of a city or the officers thereof shall elect or appoint to city offices.

3. SAME—VALIDITY OF APPOINTMENT.
   Laws 1897, c. 378, § 290, authorizing police commissioner of the city of New York to appoint detective sergeants, is not complied with where a police commissioner issues an order, as he was about to go out of office, that the chief clerk administer the oath as detective sergeants to the "following named officers, who were appointed to detective duty in the detective bureau, and who were acting therein on the 1st day of

April, 1901," and by his notifying the head of the central bureau·of such assignments, and that such sergeants were transferred to the detective bureau, to take effect forthwith, inasmuch as such order showed no attempt to exercise the power given either to "select" or "appoint," the order not designating any particular man or men, but mentioning all who were described in such section as being appointed to such offices.

4. SAME—RATIFICATION.

Where an appointment to a city office was not legally made, no subsequent declaration of city officers in relation thereto can make it legal.

Application by the people, on the relation of Edward J. Burns, for a writ of mandamus to John N. Partridge, commissioner of police of the city of New York, and others, to reinstate relator as detective sergeant in the central office bureau of detectives. Denied.

Black, Olcott, Gruber & Bonynge (Abraham Gruber, of counsel), for relator.

George L. Rives, Corp. Counsel (Walter S. Brewster, of counsel), for defendants.

COCHRANE, J. The relator was appointed a patrolman in the police department of the city of New York on the 29th day of January, 1896. On December 12, 1900, he was assigned to the detective force in the said city, known as the "Headquarters Squad," and performed detective duties therein until January 1, 1902. After this latter date he performed the duties of a detective sergeant until July 17, 1902, when he was remanded to patrol duty, and assigned to duty as a patrolman. The relator bases his claim for reinstatement on section 290 of the city charter, as amended by chapter 466 of the Laws of 1901, which took effect January 1, 1902, and is as follows:

"The police commissioner shall maintain a bureau which shall be called the central office bureau of detectives, and shall select and appoint to perform detective duty therein from the patrolmen or roundsmen as many detectives as the said commissioner may from time to time determine necessary to make that bureau efficient. The patrolmen or roundsmen so selected and appointed, and the patrolmen or roundsmen heretofore selected, appointed, or assigned to perform detective duty in the detective bureau, or in what is known as the headquarters squad, and who were acting in said bureau or squad on the first day of April, nineteen hundred and one, shall be known as detective-sergeants, shall act as such in said bureau, and shall hold the same rank and shall be eligible for promotion in the entire police force in the city under the same rules and conditions applicable to the promotion of all other sergeants of police in said city, and shall not be reduced in rank or salary except in the manner provided by law for sergeants and other officers of the police force."

The relator having been previously assigned to perform detective duty in the headquarters squad, and acting therein on the 1st day of April, 1901, comes directly within the provisions of the act above referred to. It is claimed, however, that this act is in violation of section 2, art. 10, of the constitution of the state of New York, which provides that "all city, town and village officers whose election or appointment is not provided for by this constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof, as the legislature shall designate for that purpose." Counsel for the relator has made

a very learned and exhaustive argument to demonstrate that the position of detective sergeant, as distinct from that of patrolman, is not an office within the meaning of this constitutional provision. The question, however, has been decided adversely to the relator in the case of the people against this same defendant, 74 App. Div. 291, 77 N. Y. Supp. 348, the court saying:

"We think that section 290 of the charter, as amended by the act of 1901, is a violation of this provision. Prior to the adoption of the present constitution, as we have seen, there was a position of detective sergeant in the department, whose appointment was vested in the board of police. A detective sergeant appointed to perform detective work held a city office, and, although subject to removal from that position and reassignment to patrol duty, he was entitled to a definite salary, and held a distinct position in the department. This constitutional provision, therefore, applied to this position, and the legislature could not directly appoint persons to fill that position, nor could they vest the power to make such appointment in any state board or officer. Yet by this amendment the legislature provides that hereafter these detective sergeants should hold their positions permanently, not subject to the pleasure of the police commissioner, and should consist of those detective sergeants who held the position on the 1st day of April, 1901, before the act was passed. The legislature, not a local authority, therefore, appoints the officers. * * * We think, therefore, that this amendment of section 290 of the charter was in violation of the constitutional provision, and void."

It is claimed that the question of the constitutionality of this section was not before the court for determination in that case, and that the opinion was obiter dictum, and not binding in the determination of the present case. The question received careful consideration by the court; the status of the position of detective sergeant, both before and after the amendment to the charter, which took effect January 1, 1902, was fully discussed; the statutes bearing on the question, and leading up to section 290 of the charter, as finally amended, were reviewed; and, after an elaborate discussion of the question, the conclusion was reached that the section of the charter under consideration was obnoxious to the constitutional provision above referred to, the court, in conclusion, using the language above quoted. I think that this declaration of the appellate division, thus recently expressed, after an elaborate and exhaustive discussion of the question, should be controlling.

The learned counsel for the relator further insists that, if section 290 of the charter is unconstitutional, in so far as it provides that patrolmen or roundsmen who were acting in the performance of detective duty in the detective bureau, or headquarters squad, on April 1, 1901, should be detective sergeants, the relator is notwithstanding a detective sergeant by virtue of an independent appointment made by the police commissioner January 1, 1902. Section 290 of the charter, as amended, in the first sentence thereof empowers the police commissioner to select and appoint from the patrolmen or roundsmen detectives to perform detective duty in the central office bureau of detectives. It is claimed that under this provision the police commissioner appointed the relator such detective sergeant by reason of the following facts: On the 1st day of January, 1902, Commissioner Murphy, as he was about to go out of office, made the following order:

"Ordered, that in pursuance of the provisions of section 290 of chapter 466, Laws of 1901 (charter), the chief clerk be, and is hereby, directed to administer the oath as detective sergeants to the following named officers, who were appointed or assigned to perform detective duty in the detective bureau, or in what is known as the 'Headquarters Squad,' and who were acting in said bureau or squad on the 1st day of April, 1901. [Here follows a long list of names, including the name of the relator.]"

On the same day the police commissioner, in writing, notified the head of the central office bureau of detectives and the detective sergeant in command of the headquarters squad that a large number of patrolmen of the headquarters squad, specifying them by name, and including the name of the relator, had "been assigned to duty as detective sergeants of police," and that they were thereby "transferred and assigned to the detective bureau, Manhattan, to take effect forthwith." This order and these notices did not purport to "select and appoint" from the patrolmen and roundsmen. The order simply directed that an oath be administered "in pursuance of the provisions of section 290 of chapter 466 of the Laws of 1901." It does not appear that there was any attempt to exercise the power either to "select" or "appoint" as an independent act of the commissioner. He did not designate any particular man or men, but mentioned all of the men who were described in section 290 as being thereby appointed to the office of detective sergeant. The order and notices referred to contain no language which can be construed as a present appointment, or an independent act of the commissioner exercising a power of appointment vested in him by the statute. On the contrary, the order expressly recites that those to whom the oath was to be administered "were appointed or assigned to perform detective duty in the detective bureau, or in what is known as the 'Headquarters Squad,' and who were acting in said bureau or squad on the 1st day of April, 1901." It is apparent that the commissioner was simply carrying into effect the appointment sought to be accomplished by the statute per se, and was not exercising an independent and discretionary power of appointment which the statute conferred upon him.

The relator has drawn his pay as detective sergeant from January until June, inclusive, of the present year. Pursuant to the municipal civil service provisions, Commissioner Partridge, one of the defendants herein, has certified, in effect, from month to month, for the purpose of enabling the relator to receive such compensation, that he was duly appointed detective sergeant in accordance with the provisions of law and rules and regulations of the police department, and that he had performed the duties of such detective sergeant, and that he had been employed solely in the performance of the appropriate duty of the position and employment indicated, and the civil service commissioners also certified that the relator had been appointed or employed in pursuance of law. These certificates or declarations were made, however, with reference to the facts above referred to, and which are claimed by the relator to have constituted a legal appointment or designation to the position of detective sergeant. If such appointment was illegally or improperly made, no subsequent declaration on the part of any officers of the city could make it legal or regular. In making the certificates referred to, the defendants were doubtless act-

ing in the belief that section 290 of the charter, as amended, was a lawful exercise of legislative power, and by its terms constituted the relator a detective sergeant. But, however that may be, it is not claimed that the relator was appointed by the present commissioner, and no dictum or declaration of the latter can give vitality to an unconstitutional legislative enactment, or can constitute as a valid appointment of the relator those acts or statements of his predecessor, which, as above pointed out, fell short of accomplishing that result. The relator's position must be determined by the facts existing on the 1st day of January, 1902. My conclusion is that the relator has no title to the position in question, and that he was lawfully remanded to patrol duty.

Motion denied, with $10 costs.